**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES MCGANNON,**

                  **Plaintiff,**                5:12-cv-359
                                                          (GLS)

           v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,[1]

                  **Defendant.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     REBECCA H. ESTELLE
United States Attorney             Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904

---

    [1] The Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly. *See* Fed. R. Civ. P. 25(d).

New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

# **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff Charles McGannon challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering McGannon's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## **II. Background**

On March 30, 2009, McGannon filed an application for SSI under the Social Security Act ("the Act"), alleging disability since October 15, 1997. (*See* Tr.[2] at 67-68, 172-75.) After his application was denied, McGannon requested a hearing before an Administrative Law Judge (ALJ), which was held on August 17, 2010. (*See id.* at 40-66, 71-79.) On September 20, 2010, the ALJ issued a decision denying the requested benefits, which

---

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 8.)

became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-3, 20-32.)

McGannon commenced the present action by filing a Complaint on February 28, 2012, wherein he sought review of the Commissioner's determination. (*See* Compl. ¶¶ 1-7.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 10, 16.)

### III. **Contentions**

McGannon contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.[3] (*See generally* Dkt. No. 10.) Specifically, McGannon claims the ALJ: (1) rendered a flawed residual functional capacity (RFC) determination; (2) improperly evaluated his credibility; and (3) posed an inaccurate hypothetical at step five. (*See id.* at 11-22.) The Commissioner counters that the ALJ's

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

3

decision is legally sound and supported by substantial evidence. (*See generally* Dkt. No. 16.)

## IV. Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations. (*See* Dkt. No. 10 at 2-8; Dkt. No. 16 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) is well established and will not be repeated here.[4] For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Although McGannon's first argument broadly challenges the support

---

[4] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.

4

for the ALJ's RFC assessment,[5] the errors he cites deal with weight afforded to the opinion evidence. (*See* Dkt. No. 10 at 11-18.) The Commissioner counters that the RFC assessment is correct in all respects. (*See* Dkt. No. 16 at 5-12.) The court agrees with the Commissioner.

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 416.927(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the

---

[5] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

5

examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted). "[W]here the evidence of record permits [the court] to glean the rationale of an ALJ's decision," however, it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Id.* (internal quotation marks and citation omitted). Similarly, if an ALJ omits express discussion of particular factors, his analysis may nevertheless be found legally sound if it is "clear from the record as a whole" that such factors were properly considered. *Id.*

Here, McGannon first argues that the ALJ should have afforded controlling weight to the opinions of his treating physicians, Drs. Martin Schaeffer and Muftah Kadura. (*See* Dkt. No. 10 at 11-16.) However, the ALJ's decision that neither opinion was entitled to such weight—as they were unsupported by objective medical evidence, and inconsistent with McGannon's statements regarding his activities of daily living and the record as a whole—is supported by substantial evidence. (*See* Tr. at 29.)

For example, Dr. Kadura opined that McGannon was "incapable of [ . . . ] 'low stress' jobs," unable to complete "simple work tasks" because of frequent interference from "pain or other symptoms," and would be absent from work four days per month "as a result of the impairments or treatment." (*Id.* at 383, 385.) But the findings on McGannon's capabilities are inconsistent with the opinions of Drs. Schaeffer and M. Morog, both of whom stated that McGannon could perform "low stress jobs." (*Id.* at 357, 362.) In fact, Dr. Morog found that McGannon had no significant limitations in, among other things, his ability to concentrate; a finding which is based on McGannon's admission "that his focus and concentration were good." (*Id.* at 355-57.) Furthermore, Dr. Kadura's estimation that McGannon would be absent about four days each month neither comports with Dr. Schaeffer's monthly treatment schedule, (*see id.* at 362, 364), nor his own "[e]very other month" treatment regimen, (*id.* at 383). Similarly, Dr. Schaeffer's opinion that McGannon could only occasionally hold his head in a static position, (*see id.* at 363), is contradicted by, among other things, McGannon's testimony that he is able to watch television all day, (*see id.* at 54, 56).

While it would suffice to simply affirm the ALJ's application of the

7

treating physician rule, the court is particularly unmoved by McGannon's argument regarding his treating physicians' opinions for two reasons. First, there are a remarkable number of similarities between the ALJ's RFC determination and the limitations Drs. Kadura and Schaeffer found. (*Compare id.* at 27, *with id.* at 362-63, 383-85.) And, second, as the Commissioner aptly notes, the ALJ concluded that McGannon could perform only sedentary work; thus, opinions regarding McGannon's postural abilities are irrelevant. (*See* Dkt. No. 16 at 8 n.2.)

McGannon also contends that evidence provided to the Appeals Council following the ALJ's decision supports the limitations articulated by Drs. Kadura and Schaeffer. (*See* Dkt. No. 10 at 16.) "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). "Although the new evidence submitted to the Appeals Council forms part of the administrative record under review, it does so only to the extent that it relates to the time frame encompassed in the ALJ's decision." *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002); *see* 20 C.F.R. §

404.976(b). As such, to the extent that it is relevant to the period ending September 20, 2010, (*see* Tr. at 23-32), the court includes in its consideration the evidence first contemplated by the Appeals Council, (*see id.* at 4-5).

Contrary to McGannon's contentions, the additional evidence does not suggest greater limitations during the relevant period than those found by the ALJ. While it is clear that McGannon's back condition deteriorated to the point of requiring revision surgery in late 2011, (*see id.* at 414-38), and that discussion of revision occurred as early as November 2009, (*see id.* at 422), treatment notes indicate that, through January 2011, McGannon's back health showed signs of improvement, (*see id.* at 439-47). Specifically, McGannon responded positively to facet injections, and, on January 11, 2011, Dr. Schaefer noted that his back and extremity pain complaints were "dramatically improved." (*Id.* at 439.) On that same date, McGannon told Dr. Schaefer that he was "the best [he'd been] in years." (*Id.*) Although McGannon's back pain increased significantly in the subsequent months, (*see id.* at 429-38), the fact that such deterioration did not occur until early 2011 undermines McGannon's argument that the additional evidence shows greater limitations during the relevant period

9

than those found by the ALJ.

In addition to concluding that the ALJ did not err in assigning Dr. Kadura and Schaeffer's opinions "little weight," (Tr. at 29), the court also finds no error in the weight assigned to the assessments of Drs. Morog and Kalyani Ganesh, (*see id.*). Besides being unfavorable to his disability claim, McGannon's assertions regarding these opinions are meritless because they have no bearing on the ALJ's ultimate RFC assessment. (*See* Dkt. No. 10 at 16-18.) Semantics aside, Drs. Morog and Ganesh issued opinions that the ALJ was entitled to, and did in fact, rely upon in fashioning McGannon's RFC determination. (*See* Tr. at 27-29, 331-34, 355-57); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

In sum, the ALJ considered the appropriate factors in weighing the medical opinions, and in so doing, arrived at an RFC determination that is supported by substantial evidence. Accordingly, the ALJ's RFC assessment is affirmed.

**B.** **Credibility Assessment**

McGannon next asserts that the ALJ's assessment of his credibility was legally flawed and is factually unsupported. (*See* Dkt. No. 10 at 19-21.) Again, the court disagrees.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 1996 WL 374186, at \*4 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-

11

444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi)).

Here, the ALJ found that McGannon's subjective complaints were not entirely credible to the extent that they were inconsistent with his RFC determination. (*See* Tr. at 27-28.) In finding as much, the ALJ provided a thorough explanation of the objective medical evidence that belied McGannon's complaints. (*See id.* at 25-29.) Additionally, McGannon stated he is able to do laundry; wash dishes; cook, albeit mostly microwave meals; dress and groom himself; shop for groceries; watch television; and read. (*See id.* at 54-55.) Based on this evidence, the court concludes that the ALJ properly weighed "the objective medical evidence in the record, [McGannon's] demeanor, and other indicia of credibility." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted). Thus, there is no reason to disturb the ALJ's credibility assessment.

**C.   Step Five Determination**

McGannon's final argument—that the ALJ posed an incomplete hypothetical to the vocational expert—is also without merit because it assumes that there were errors in the earlier steps. (*See* Dkt. No. 10 at 21-

22.) However, because the court has already found otherwise, it suffices to say that McGannon's argument is untenable. As such, the ALJ's use of a vocational expert was appropriate, as the hypothetical posed was supported by the record. (*See* Tr. at 30-31.)

### D. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Clerk is directed to substitute Carolyn W. Colvin, Acting Commissioner of Social Security, for defendant Michael J. Astrue, and amend the caption accordingly; and it is further

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and McGannon's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 28, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court